# In the United States Court of Federal Claims

No. 19-612T

(Filed: October 6, 2020)

| | |
|---|---|
| ************************************** | |
| PACIFIC WIND, LLC, | * |
| Plaintiff, | * Subject-Matter Jurisdiction; The American Recovery and Reinvestment Act of 2009 Section 1603; Article III Standing; Motion to Dismiss; RCFC 12(b)(1); Redressability; Direct Economic Interest; Injury in Fact; Indemnification Agreement. |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |
| ************************************** | |

*Keith Martin*, Norton Rose Fulbright US LLP, Washington, D.C., with whom were *Seth M. Kruglak* and *Robert Kirby*, New York, New York, and *Amanda L. Rosenberg*, Los Angeles, California, for Plaintiff Pacific Wind, LLC.

*Bart D. Jeffress*, Attorney of Record, with whom were *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, *G. Robson Stewart*, Assistant Chief, and *Katherine Powers*, Trial Attorney, Justice Department Tax Division, Court of Federal Claims Section, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This case centers on the Government's obligation to pay a cash grant due to Plaintiff for investing in a wind farm in California. Under Section 1603 of the American Recovery and Reinvestment Act of 2009 (the "Recovery Act"), Pub. L. No. 111-5, 123 Stat. 115, Plaintiff Pacific Wind, LLC ("Pacific Wind") is entitled to a 30 percent credit of the dollar amounts invested in grant-eligible assets. Congress enacted § 1603 to encourage the construction of alternative energy production facilities.

Pacific Wind is the owner of a wind farm in Kern County, California ("the Project") and leased it to a subsidiary of EDF Renewable Energy, Inc. ("EDF"). In 2012, Pacific Wind and the Project were sold to PacWind Holdings Lessor Trust ("PacWind") in a sale-leaseback transaction. In this transaction, PacWind purchased Pacific Wind and the Project and then leased the Project back to an EDF subsidiary for a term of approximately 20 years.

After placing the wind farm in service, Pacific Wind applied for over $100 million in § 1603 grants. In its application, Pacific Wind used an independent appraiser Marshall & Stevens and included an opinion from an independent auditor Ernst & Young, validating the claimed grant-eligible costs. Ultimately, the Treasury disallowed $1,904,760 in extended warranties costs and $372,109 in "soft costs and part of the purchase price paid by the Lessor Parent that Treasury allocated to the extended warranty."[1] Compl. ¶ 44.

Pacific Wind commenced this action on April 24, 2019, alleging that the Government underpaid them by over $8.4 million when it made a grant to Pacific Wind pursuant to § 1603. The Government has moved to dismiss the complaint for lack of subject-matter jurisdiction. According to the Government, Pacific Wind lacks standing because when Pacific Wind was sold, the non-party seller agreed to indemnify Pacific Wind for any § 1603 grant shortfall. Essentially, the Government argues that an indemnification agreement prohibits a plaintiff from making a claim against the party who inflicted the injury.

In response, Pacific Wind asserts that it has standing because the "Treasury injured Plaintiff by refusing to pay the amounts to which Plaintiff is entitled" under § 1603. Dkt. No. 17 at 21. Pacific Wind further argues that its "agreement to use such funds to repay its indemnitor is irrelevant to its standing to sue for wrongdoing under binding Supreme Court precedent." Id.

The Government's obligation to Pacific Wind is not affected by the fact that Pacific Wind had an indemnification agreement with EDF. Accordingly, the Government's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction is DENIED.

Background

Section 1603 of the Recovery Act allows the Treasury to provide "Grants for Specified Energy Property In Lieu of Tax Credits." 26 U.S.C. § 48. Effectively, it reimburses individuals or entities for a percentage of the cost of placing specified energy property such as wind farms, into service. Id.

---

[1] Pacific Wind "does not dispute the remaining cash grant shortfall for which it applied that Treasury has attributed to extended warranties." Compl. ¶ 59.

Pacific Wind, LLC, is a special-purpose Delaware limited liability company and owns the windfarm project at issue. Compl. ¶¶ 8, 25. Pacific Wind spent $319,597,539 developing the 140-megawatt wind farm in Kern County, California. Compl. ¶¶ 4, 30. Pacific Wind is owned by PacWind Holdings Lessor Trust, a Delaware statutory trust that is not a party to this suit. Id. ¶ 10.

On September 7, 2012, when the windfarm was nearly completed, the developer, EDF Renewable Energy, Inc., sold Pacific Wind to one of its subsidiaries, EDF Renewable Asset Holdings, Inc., as part of a sale-leaseback transaction. Id. ¶¶ 31–34. At the time of the sale-leaseback transaction, Pacific Wind had not yet applied for its anticipated § 1603 cash grant. Dkt. No. 11 at 11. EDF Renewable Asset Holdings, Inc. then resold Pacific Wind to PacWind Holdings Lessor Trust, whose equity holders are tax equity investors. Id. The overall purchase price was $351,557,293, an amount appraiser Marshall & Stevens determined to be the fair market value using a replacement cost and income analysis. Id. ¶¶ 32, 36. Pacific Wind then leased the Project to another subsidiary of developer EDF, Pacific Wind Lessee, LLC. Id. ¶ 9. As part of the transaction, the lessee agreed to indemnify Pacific Wind for any § 1603 shortfall. Dkt. No. 16, Ex. 1 at A0087. Pacific Wind then promised to reimburse any recovery to EDF should there be a shortfall. Dkt. No. 17 at 6.

On September 14, 2012, Pacific Wind applied for a § 1603 cash grant of $101,135,896 before sequestration, which is equal to thirty percent of $337,119,654, the purchase-price basis of its eligible property. Compl. ¶¶ 38, 40. To establish its eligibility for the Recovery Act's cash grant, Pacific Wind submitted applications and an independent appraisal conducted by Marshall & Stevens and a "Report of Independent Accountants" from Ernst & Young LLP. Compl. ¶¶ 39, 41. The Department of Treasury, however, reduced the award to $91,252,173,[2] corresponding with an eligible basis of $304,173,910.[3] Compl. ¶ 42. According to Pacific Wind, the Treasury's reduced eligible basis equals the "bare cost to build the eligible portion of the Project with zero profit allowed on the sale of the project at the end of construction to the Lessor Parent." Compl. ¶¶ 41–42. Notably, the Government does not dispute that the Treasury underpaid Pacific Wind's § 1603 grant.

---

[2] Section 1603 grants during this time were subject to an 8.7 percent reduction for sequestration, bringing the final award to $83,313,235.

[3] Originally, on April 26, 2013, the Treasury awarded Pacific Wind $83,061,583. A month later the Treasury supplemented the award with $251,652, citing an error in its original calculations. Compl. ¶¶ 41, 43.

3

Analysis

I.   Standard of Review

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), the Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Essex Exp. Lines v. United States, 739 F.3d 689, 692 (Fed. Cir. 2014). The Court's task in considering a jurisdictional challenge is a limited one, and considers not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 120 (2004). Where subject-matter jurisdiction is challenged, the plaintiff must establish the Court's jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

A.   Tucker Act

Under the Tucker Act, the Court can hear any claim that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The Tucker Act "does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). "In the parlance of Tucker Act cases, that source must be 'money-mandating.'" Id. This Court previously has held that § 1603 is "money mandating," and that it has jurisdiction over § 1603 disputes. See W.E. Partners II, LLC v. United States, 119 Fed. Cl. 684, 690 (2015), aff'd, 636 F. App'x 796 (Fed. Cir. 2016); LCM Energy Sols. v. United States, 107 Fed. Cl. 770, 772 (2012).

B.   Standing Requirements

Standing is a threshold jurisdictional issue that must be met before a case may proceed on the merits. See Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). "The Court of Federal Claims, though an Article I court . . . applies the same standing requirements enforced by other federal courts created under Article III." Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003). To establish standing, a plaintiff must show: (1) that it has suffered an "injury in fact," an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) that there is a "causal connection between the injury and the conduct complained of," and (3) that the injury is likely to be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–66 (1992).

## II. Pacific Wind Has Standing to Bring Its Claim in This Court

In its motion to dismiss, the government asserts that Pacific Wind lacks standing to pursue its claim because a non-party, EDF, indemnified Pacific Wind for the § 1603 cash grant shortfall. Dkt. No. 16 at 19. The Government posits that where a third party "already had paid plaintiff for the § 1603 cash grant shortfall . . . plaintiff was not suffering any actual harm." Dkt. No. 16 at 19. Notably, the Government does not dispute that it underpaid Pacific Wind and concedes that had the seller of Pacific Wind not included an indemnification clause in its sale, "the analysis would be different." Id. at 17 n.7. The Government emphasizes that Pacific Wind's injury has already been redressed and "the fact that the $8,400,203 injury was paid by EDF Renewable Energy and not Treasury does not change the fact that plaintiff is no longer suffering a harm." Id. at 23. The Government, therefore, contends that a favorable judicial decision would not "redress" any injury that Pacific Wind might have suffered because any monetary award would go to EDF. As a result, the Government concludes that Pacific Wind has "no stake" in the litigation and lacks standing. Id.

Pacific Wind argues that it suffered a particularized injury when it applied for a cash grant and the Government refused to pay the full amount it was entitled to under § 1603. Pacific Wind further argues that the litigation will redress its injury as the Government is required to "pay what [it] owe[s]." Dkt. No. 17 at 16 (quoting Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 274 (2008)). Further, Pacific Wind argues that the fact a third-party has indemnified it for the shortfall is immaterial. In support, Pacific Wind cites several cases supporting its claim that "federal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit." Dkt. No. 17 at 18 (quoting Sprint, 554 U.S. at 287). Accordingly, Pacific Wind argues that its indemnity agreement does not affect its standing. Id. at 20–21.

### A. Injury in Fact

The Government argues that Pacific Wind's § 1603 application did not create a binding contract with the Government, therefore depriving Pacific Wind of standing. Dkt. No. 18 at 20. The Government maintains that because § 1603 does not create a contract, Pacific Wind is not entitled to any "rights" or "benefits." Id. In support, the Government cites ARRA Energy Co. I v. United States, 97 Fed. Cl. 12 (2011), which found that a § 1603 grant application does not create an "express contract." Id. at 16. Notably, in ARRA Energy Company, the Court dismissed plaintiff's breach of contract claim (a claim Pacific Wind does not bring in this case) and permitted plaintiff to proceed with its claim that the Government violated § 1603. Id.

Pacific Wind responds that the Government violated its mandatory obligation to award reimbursement grants to it under § 1603. According to Pacific Wind, it was entitled to receive $100,452,835.50, which is 30 percent of $334,842,785, its eligible basis in the

5

Project.  Ultimately, the Treasury only paid $91,252,173, creating a shortfall of approximately $8,400,203 after sequestration.  Compl. ¶ 59.  Pacific Wind notes that the Government does not dispute that the amount paid to Pacific Wind was $8.4 million less than the amount requested; rather, it merely tries to shift the burden of recouping that money to non-party EDF.  Dkt. No. 17 at 14–15.

Pacific Wind clearly satisfies the standing requirements.  The Government "may indeed be obliged to follow a statute or regulation regardless of whether it has a contractual duty to perform."  ARRA Energy Co. I, 97 Fed. Cl. at 28 (quoting Hanlin v. United States, 316 F.3d 1325, 1331 (Fed. Cir. 2003)).  Pacific Wind bases its suit upon a concrete and particularized "injury in fact," namely, the Treasury's failure to pay the full cash grant amount Pacific Wind was allegedly entitled to under § 1603.

   B.   Identity of Indemnifier

The Government next argues that the cases cited by Pacific Wind involve insurance subrogation, which it asserts is inapplicable to this case as EDF is not an insurer.  Dkt. No. 18 at 6.  The problem with this argument is that the Government is trying to arbitrarily narrow prior holdings to the insurance context.  There is no reason the principle that indemnification is immaterial to standing cannot be applied in the sale-leaseback context.  Cf. Am. Mar. Transp., 18 Cl. Ct. at 290; Quarles Petroleum Co. v. United States, 551 F.2d 1201, 1207 (Ct. Cl. 1977).  A breaching party cannot deny a plaintiff's rights on the grounds that plaintiff entered into an indemnification agreement with a third party.  See Philip Morris & Co. to Use of Aetna Ins. Co. v. United States, 149 F. Supp. 166, 168 (Ct. Cl. 1957); see also Kawa v. United States, 77 Fed. Cl. 294, 300 (2007).

The Government concedes that in some instances, a plaintiff may still have standing despite a third-party's reimbursement.  Dkt. No. 18 at 19–20.  In its reply brief, the Government admits that this Court allowed a plaintiff who had been reimbursed by an insurance provider to proceed with its case because it was "the government's own breach of contract that had caused the loss."  Dkt. No. 18 at 19–20 (citing N. Slope Tech., Ltd. v. United States, 27 Fed. Cl. 425 (1992)).  The only rationale offered by the Government for distinguishing that case is the third party here was not an insurer but rather a non-party lessee of the wind farm.  The Court, however, is not convinced.  None of the decisions addressing third-party reimbursement purport to limit their holdings to the insurance context.  Moreover, not every case cited by Pacific Wind is limited to the insurance context.  See Philip Morris, 149 F. Supp. at 168 (plaintiff reimbursed by a trucking company).

Accordingly, the Government is not absolved from its liability merely because EDF indemnified Pacific Wind.  The Government caused Pacific Wind's harm.  Pacific Wind's injury is directly related to the Treasury's refusal to make the full payment under § 1603.  It is irrelevant that Pacific Wind was reimbursed under an indemnification agreement.

6

Notably, the Government loses nothing should it be required to pay Pacific Wind the shortfall—money which it has no equitable right to retain.

### C. Redressability

The Government's argument that Pacific Wind cannot satisfy the redressability requirement because it will provide any recovery to EDF misconstrues the redressability inquiry. The redressability inquiry "focuses on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation—not on what the plaintiff ultimately intends to do with the money recovered." Sprint, 554 U.S. at 287 (emphasis in original); see also Am. Mar. Transp., Inc. v. United States, 18 Cl. 283, 292 (1989).

The Government cannot "step into the shoes" of Pacific Wind and reap the benefits of Pacific Wind's indemnification agreement with EDF. N. Slope Tech., Ltd., 27 Fed. Cl. at 429. The fact that Pacific Wind recovered money under an indemnification agreement with a third party in no way lessens the degree of harm caused by the Treasury's actions. Cf. In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs, 146 Fed. Cl. 219, 253 (2019) (holding that insurance money in a takings claim "has little bearing on whether the government effected a taking initially"); N. Slope Tech., 27 Fed. Cl. at 428 ("[A]cceptance of a given amount from the insurance company…did not affect the right of the plaintiff to recover . . . ."); Am. Mar. Transp., 18 Cl. Ct. at 291 (noting plaintiff's business relationship with third party—the ultimate recipient of any damages—might also be injured should it not recover damages from the Government).

The Government also argues that Pacific Wind is not "exercising legal rights originating from an insurance or subrogation contract." Dkt. No. 16 at 16. The Government, however, offers no convincing reason why the type of contractual relationship should impact a plaintiff's ability to satisfy Article III's standing requirements. There is no rule that prevents Pacific Wind from suing for the benefit of EDF, who absorbed the loss. See, e.g., United States v. Am. Tobacco Co., 166 U.S. 468 (1987) (allowing plaintiff to recover from the Government the value of its stamps destroyed by a fire for the benefit of its insurance carriers); S.W. Aircraft Inc. v. United States, 551 F.2d 1208, 1210 (Ct. Cl. 1977) (holding aircraft owner's receipt of insurance proceeds did not bar suit against Government). What Pacific Wind does with the proceeds after the suit should not concern the Government. See Hughes Commc'ns Galaxy, Inc. v. United States, 38 Fed. Cl. 578, 581 (1997), aff'd, 271 F.3d 1060 (Fed. Cir. 2001). In short, the Government gains no immunity for its actions by relying on an agreement to which it was not a party. Pacific Wind's indemnification agreement with EDF is immaterial to the Government's liability and does not impact Pacific Wind's right to recover the loss for which the Government was responsible. See Chicago, St. Louis and New Orleans R.R. v. Pullman S. Car Co., 137 U.S. 79, 87 (1891).

\*\*\*

None of the reasons offered by the Government for denying Pacific Wind's standing are convincing. The Government caused Pacific Wind injury and this litigation will redress that injury should Pacific Wind be successful. Pacific Wind therefore has standing to sue.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Government's motion to dismiss.

IT IS SO ORDERED.

s/Thomas C. Wheeler  
THOMAS C. WHEELER  
Judge